JOHN CALDWELL v. L. A. BIGGER *et al.*

No. 15,050.   (90 Pac. 1095.)

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Service by Publication—Description of the Land.* In a suit to quiet title a notice by publication which describes the real estate by the lot and block numbers of an addition to a city according to the recorded plat thereof, which plat designates the land by its proper government subdivision, which has in fact been of record for a number of years, which has been recognized by the city and the public generally, and which has been acted upon by the authorities for purposes of taxation, sufficiently identifies the property affected to give the court jurisdiction as against a defendant who, if he had desired, might have impeached the plat as invalid.

2. JUDGMENTS—*Collateral Attack.* A judgment quieting the title of a tax-deed holder, rendered by a court having jurisdiction, cannot be impeached in a collateral action of ejectment, nor can the validity of the tax deed be relitigated in such an action, no matter how vulnerable it might have been if it had been properly assailed.

3. CONVEYANCES—*Unrecorded Deed—Purchaser Pendente Lite.* A party who withholds a conveyance of real estate from record until after a suit to quiet title against his grantor has been commenced by a person who is ignorant of the existence of the deed is a purchaser *pendente lite*, and is bound by the judgment rendered in the action.

4. ATTORNEY AND CLIENT—*Creation of the Relationship.* The relation of attorney and client can be created only by a contract of employment, express or implied.

5. —— *Termination of the Relationship—Assignment of a Judgment.* If a party to a suit assign the judgment in his favor to a stranger, so that his relation to the case ends, the relation of his attorney to the suit also ends, unless he be reemployed by the assignee.

6. —— *Purchase by Attorney at Execution Sale.* An attorney for the owner of a judgment is not disqualified to purchase real estate sold on execution to satisfy the judgment at a sale held after his client has assigned the judgment to a stranger who has not reemployed him.

7. SHERIFF'S SALE—*Validity—Collateral Attack.* A sheriff's

4—76 KAN.

sale is not, after confirmation and the issuance of a sheriff's deed, void and subject to collateral attack because the owner of the judgment wrote a letter to the sheriff directing a return of the order of sale, which letter was not received until after the sale had been made.

8. ATTORNEY AND CLIENT—*Transaction Sustained.* A transaction between an attorney and his client examined and sustained.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed June 8, 1907. Affirmed.

*Carr W. Taylor,* for plaintiff in error, and crosspetitioner in error, Leslie Ullrich.

*Fairchild & Lewis, Vandeveer & Martin, Prigg & Williams,* and *H. Whiteside,* for defendants in error, except Leslie Ullrich.

The opinion of the court was delivered by

BURCH, J.: The plaintiff in this case brought an action of ejectment to recover the possession of thirteen twenty-eighths of a quarter-section of land. His right to possession depended upon ownership. The defense was that the plaintiff never had title, but if such were not the case whatever rights he once possessed were extinguished by a judgment quieting title against him and by a sheriff's deed executed and delivered in consummation of an execution sale based upon a judgment against him.

For the purposes of this decision it may be conceded that, prior to October, 1893, the plaintiff was the owner of the interest which he asserts in the land in controversy, and attention may be directed entirely to the sufficiency of the defenses urged.

In October, 1888, the Hutchinson Investment Company, claiming to be the owner in fee simple of the land, and actually being the owner of a fifteen twenty-eighths interest in it, platted it into lots, blocks, streets and alleys, and filed a copy of the plat with the register of deeds of the county as the Hutchinson Investment

Company's Ninth Addition to the city of Hutchinson. The certificate to the plat specifically stated that it embraced the northeast quarter of section 12, township 23 south, range 6 west of the sixth principal meridian. Thereafter the land was shown upon the tax-rolls by lot and block descriptions. It was assessed by the city assessor, taxes were levied against it in that form, and in October, 1893, a tax deed for substantially all the lots in the addition was issued to E. L. Meyer and duly recorded.

At different times proceedings were instituted to bring the land covered by the plat within the limits of the city of Hutchinson. In the year 1890 the plaintiff was in Hutchinson, having business which called him there, and saw that the land had been laid out in streets. Deeds of portions of it by lot and block numbers were made and recorded and possession was taken under them.

In January, 1894, the grantee in the tax deed brought a suit to quiet his title against the plaintiff. In the petition it was alleged that Meyer was the owner of the legal and equitable title to the land and in the actual and peaceable possession of it; that the plaintiff claimed an interest in it, the true source of which was stated; but it was alleged such claim was a cloud upon Meyer's paramount rights, and he prayed that he be declared to be the owner and holder of the legal and equitable title, that the claim of the plaintiff be declared void, and that his title be quieted against the plaintiff. Service was made by publication. The affidavit was in due form, and the notice was regular in every respect, except that the land was described as lots in blocks of the Hutchinson Investment Company's Ninth Addition to the city of Hutchinson, according to the recorded plat thereof. The plaintiff defaulted, and the relief prayed for in the petition and described in the notice was granted in full. No proceeding in error was instituted to reverse, vacate or modify the decree, and no attempt was made within the three-year statute

of limitations to open it because based on publication service. The question is, therefore, if the Meyer title is open to question in the plaintiff's ejectment suit.

Attack by means of ejectment is collateral (*O'Keefe v. Behrens*, 73 Kan. 469, 473, 85 Pac. 555), and the judgment declaring the plaintiff to be without title and declaring Meyer to have the legal and equitable title to the land is conclusive, unless some fact altogether destructive of jurisdiction was wanting in the proceedings. The only claimed defect is that regarding the description of the land in the notice.

The statute provides that when service is made by publication the notice shall state the nature of the judgment to be taken. To make the notice perfect real estate to be affected by the judgment should be described. But it need not describe the real estate at all, to be good against a collateral attack, if it shows even inferentially or imperfectly that real estate will be affected. The decision in *Garrett v. Struble*, 57 Kan. 508, 46 Pac. 943, is conclusive upon this question. In that case the notice read as follows:

"Said petition will be taken as true, and judgment rendered in said action against said defendant, William J. Struble, for the sum of eight hundred and twenty-eight $6\frac{8}{100}$ dollars, with interest thereon at the rate of 7 per cent. per annum from the 23d day of July, 1887, and for the sale of certain real property attached in this action." (Page 508.)

In the opinion is was said:

"The only question which we deem necessary to consider is whether said notice was void or not. It was complete in all respects, except those pointed out by the trial court. In these it was irregular, defective, and at least voidable. It could not have withstood a direct attack, because it did not sufficiently state the nature of the judgment which would be rendered upon default of answer. It indicated the amount of the judgment that would be taken and that certain real property attached in the action would be sold, but it did not describe the land.

"As against a direct attack the notice was insuffi-

cient under the authority of *Adolph Cohen v. C. B. Trowbridge,* 6 Kan. 385, and *Cackley v. Smith,* 38 Kan. 450, 17 Pac. 156. . . . In *Harris v. Claflin,* 36 Kan. 543, 13 Pac. 830, it was held that if there is a total want of evidence upon a vital point in the affidavit for publication the court acquires no jurisdiction by publication of the summons; but where there is not an entire omission to state some material fact, but it is inferentially or insufficiently set forth, the proceedings are merely voidable. The same principle as nearly as may be should be applied as the test of the sufficiency of a publication notice. If there is a total failure to state in the notice any material matter required by section 74 of the civil code the service is void; but if there is not an entire omission of such material matter, and it is inferentially or insufficiently set forth, the notice is merely voidable and not void. Following this rule, we hold that the notice in the case of Garrett against Struble was irregular, defective, and voidable, but that it was not void, and therefore must be held sufficient as against a collateral attack." (Page 510.)

It is not necessary that land be described in a notice by publication by the government description or by lot or block number. All that is required is that any person of common understanding may be able to locate and identify it by following up the notice.

In this case the notice gave a true description. The land had been platted as the Hutchinson Investment Company's Ninth Addition to the city of Hutchinson. The plat was valid on its face, its dedication had been accepted by the public, and it had been adopted as the basis of official conduct without protest on the part of the plaintiff. Even if the plaintiff might have impeached it, it had not been vacated, and it was a *de facto* plat, which served to identify the property so that no man giving heed to it could be misguided. Besides this, the notice described the land as it was in fact publicly known and as the plaintiff should have known it from the suggestive fact noted above which had obtruded itself upon him. "Notice" by publication is sufficient, under the statute, to give the court

jurisdiction. For complete and accurate information defendants must follow up the suggestions contained in the notice by due investigation and inquiry. Just as the defendant in *Garrett v. Struble, supra,* was bound to take notice what land belonging to him was indicated by the words "certain real property attached in this action," so the plaintiff here was bound to take notice what land belonging to him was indicated by the description given. It is not necessary to encumber the reports with lists of authorities upon these fundamental principles of the law. The notice probably was not voidable. The court had authority to proceed with the case, and the plaintiff is bound by the judgment.

In 1892 the plaintiff made a conveyance of the land by way of security to Paul J. Ullrich, who was not made a party to the suit to quiet title, and a successor in interest of the grantee, cross-petitioner herein, claims the judgment did not bind him. But the conveyance was not filed for record until after the time fixed by the notice for answer had expired. Under the recording act the instrument was invalid, except between the parties and those having actual notice of it, until it was placed on record. There is no claim that Meyer had any notice of it when he commenced his suit. Therefore Ullrich was a purchaser *pendente lite,* whose rights dated from the time his deed reached the record, and those rights fell with the title of the plaintiff, from whom they were derived. If this were not true a party might be forever prevented from quieting his title by the withholding from record of one secret conveyance after another. (*Smith v. Worster,* 59 Kan. 640, 54 Pac. 676, 68 Am. St. Rep. 385.)

The plaintiff makes a multitude of objections to the validity of the Meyer tax deed. It is not necessary to enumerate them, because they cannot be considered. The petition in the suit to quiet title presented every issue the plaintiff now raises. The court had jurisdiction to hear and determine them. It has rendered

a final judgment deciding all of them against the plaintiff, and he cannot now relitigate them. It does not affect the case that the court may have erred at every step of the proceeding. (*Clevenger v. Figley*, 68 Kan. 699, 75 Pac. 1001; *Ehrsam v. Smith*, 61 Kan. 699, 60 Pac. 740.) The plaintiff's remedy lay in a direct attack in some one of the many ways provided by law. He cannot avoid the binding force of a judgment rendered by a court having jurisdiction by the indirect and collateral action of ejectment. In the case of *Priest v. Robinson*, 64 Kan. 416, 67 Pac. 850, the second paragraph of the syllabus reads:

"When the defendant in an action of ejectment claims title based on a tax deed, and, also, upon a decree quieting the title in his antecedent grantor in possession under such tax deed, in an action to which plaintiff was a party, the validity or invalidity of the tax deed is not material, unless the decree quieting the title is absolutely null and void and subject to collateral attack."

The court would rest its decision here, if it were clear from the record that the judgment quieting the Meyer title embraced all the land now claimed by the plaintiff. If it does not, the plaintiff is met by another insuperable obstacle.

In the year 1890 the plaintiff was sued by his former attorneys, Brown & Kline, and his interest in the land in controversy was attached under the description: the northeast quarter of section 12, township 23 south, range 6 west, in Reno county, Kansas. The cause went to judgment and the land was ordered sold. Kline assigned his interest in the judgment to Brown. The costs were very heavy. Many efforts were made to sell the land, but bidders could not be found who would meet the requirements of the appraisement. New appraisements were ordered from time to time, but in June, 1898, the land was still unsold. The plaintiff had given a bond superseding the judgment pending proceedings in error in this court, and it was

Brown's purpose to exhaust the attached real estate before proceeding upon the bond. He was represented locally by Mr. F. L. Martin, of Hutchinson. Brown came to Hutchinson and proposed to Martin that he interest parties in the purchase of the land. This was done, and an arrangement made with Mr. L. A. Bigger to advance money to take up the costs and to buy the land was communicated to Brown, and in response he wrote the following letter:

"CHICAGO, May 17, 1898.

*"Hon. F. L. Martin, Hutchinson, Kan.:*

"MY DEAR SIR—Yours of the 7th at hand. In reply will say that I hereby authorize you, in case a bid is made at an amount equal to two-thirds of the appraisement of the Caldwell land, to receive from the sheriff or the bidder the surplus above the costs, and you may give receipt in full therefor. Out of this I care for nothing. You may keep the balance over the costs as your fee, but collect enough to pay Prigg & Williams a small fee which they may have a bill for, as they did some work for me on this matter. Also, have the sheriff pay you $20 of the cost money, for I put up $15 to start the suit and paid the sheriff $5 on publication fees. This was paid to Patent, therefore I am to have $20 out of cost money, but you may receipt to the sheriff or purchaser for the balance over the costs on the bid, whatever it may be, and if the bid does not exceed two-thirds of the appraisement you' may retain the difference between the amount bid and the costs as your fee, and this, of course, you may cut down as you see fit with the purchaser.

"This complies with the suggestion of your letter, and I trust, of course, is satisfactory to all parties concerned. I suppose the land will be purchased on the 8th. Please write me by return mail if this is perfectly satisfactory. Yours very truly,

W. E. BROWN."

At that time an order of sale had been issued and a sale set for June 8. Shortly before the time fixed for the sale Brown entered into negotiations looking to an assignment of the judgment to Paul J. Ullrich, the surety on the supersedeas bond. He desired the order

of sale returned to gain time in which to consummate the assignment, and desired Martin to make the necessary request. Martin explained to him that the party who had become interested in the land·had already purchased the accumulated costs in the case relying upon the letter of May 17, and stated that he did not desire to prejudice those rights by directing a return of the order of sale. Brown replied that he only wanted thirty days' time to give Ullrich an opportunity to decide. Therefore, he directed the sheriff to return the order, but at the same time authorized Martin to cause another to issue at once. This was done, the precipe being signed by Martin as attorney for Brown and as owner of the costs. That the entire conduct of Martin in the matter was fully approved by Brown, who was himself a lawyer, is shown by the following excerpts from Brown's testimony:

"Ques. Did you ever give him authority to sign the precipe for order of sale as owner of costs? Ans. I gave him authority to act for me as my attorney in issuing and attending to orders of sale, and I understood and was informed that he also represented the people who were entitled to costs in endeavoring to get them their costs, and I did consent and gave authority to him also in connection with my claim to endeavor to collect costs."

"Q. You told Judge Martin that he could go ahead and issue another order of sale after the one which was then outstanding had been returned? A. Yes, sir; gave him instructions to do so.

"Q. Did n't you know that Judge Martin's interest as owner of the costs were adverse to your interests, and consequently adverse to Paul J. Ullrich as purchaser? A. No. I did not understand there was any adverse interests at all between Judge Martin and me.

"Q. If he signed the precipe for sale you knew as a lawyer that his interest was adverse to your interests? A. Not at all, because they were right in line with my interests. It was to my interest to see that the costs were collected as well as the judgment."

The property was advertised for sale on July 20. Before the sale occurred Brown assigned the judgment

to Ullrich, but did not advise him of his agreement with Martin. At the sale Martin purchased the property for two-thirds of the appraised value. The sale was confirmed and a sheriff's deed was duly issued to him. Afterward he conveyed to Bigger, who has since conveyed to others. After purchasing the judgment Ullrich wrote the sheriff to return the order of sale, but the letter was not received until after the sale had been made. No attempt was made to oppose confirmation or to review the proceedings, and the question now presented is if the sheriff's deed is absolutely void.

The matter may be disposed of very briefly. The relations between Martin and his client, Brown, were unimpeachable, both in law and in morals. They were established in a diligent effort to promote Brown's interests, were fair and just and beneficial to Brown, were fully understood, approved and appreciated by him, and met all the requirements of the high standard of duty imposed upon an attorney toward his client recognized by this court in *Yeamans v. James,* 27 Kan. 195, 207, *Haverty v. Haverty,* 35 Kan. 438, 11 Pac. 364, and *Cunningham v. Jones,* 37 Kan. 477, 15 Pac. 572, 1 Am. St. Rep. 257. (See, also, 4 Cyc. 960 and authorities there collated.) Not to have carried out the arrangement and protected Martin and Bigger, had Brown remained the owner of the judgment, would have constituted a breach of moral and legal duty on his part.

When the judgment was assigned to Ullrich, Brown's connection with the proceeding ceased and Martin's authority to appear as an attorney for Brown ceased. He was not thereafter retained by Ullrich, did nothing on Ullrich's behalf, and Ullrich neither recognized him as an attorney nor relied upon him for anything. Ullrich did not even utilize him in the attempt to procure a return of the order of sale. The relation of attorney and client must be created by contract, express or implied. (*McAlexander v. Wright,*

3 T. B. Mon. [Ky.] *190, 16 Am. Dec. 93; *Cartwell v. Menifee,* 2 Ark. 356; 4 Cyc. 926.)   It is too confidential to be assigned with the subject-matter of the employment.    Therefore, when Martin's client severed his connection with the case Martin himself was entirely free to protect and carry out the arrangements which Brown had authorized, and which his assignment to Ullrich could not prejudice.   Being under no legal or professional obligation to Ullrich, or to Caldwell, the owner of the land, Martin was a lawful bidder at the sale, and the sheriff's deed to him is not even voidable, much less void.

If, however, Martin were a disqualified bidder, the sale to him would be voidable merely.   His conduct could be ratified by Ullrich, the only party with whom he was obliged to keep faith, and third persons like Caldwell could not complain.   To charge him as a trustee of the land for Ullrich would be in effect to affirm the validity of the sale, and until steps were taken by which to impeach the sale in some direct proceeding brought for the purpose it would stand against any kind of a collateral attack, either by Ullrich or by Caldwell.   (Freeman, Void Jud. Sales, 3d ed., § 33; 24 Cyc. 29.)

The sheriff's sale is not void and subject to collateral attack merely because Ullrich wrote the sheriff to return the order of sale, the letter not having been received until after the sale was made.   If the fact afforded ground for relief it should have been presented in opposition to confirmation.

From the record as a whole it appears that the plaintiff has slept upon his rights and has mistaken his remedy.

The plaintiff having delayed his request for special findings until the argument of the cause in the district court was nearly closed, having then failed to comply with the request of the court that he submit special questions, and having led the court to believe that the request for special findings had been abandoned, he

is scarcely in a position to complain that none were made. Besides this, he admits that the facts are really undisputed, and the only embarrassment he claims to have suffered is that he has been obliged to argue the case more extensively than might have been necessary had special findings of fact and conclusions of law been stated. This circumstance hardly indicates prejudice to his substantial rights sufficiently grievous to work a reversal, and the judgment of the district court is affirmed.