LESLIE ULLRICH, *Appellant*, v. L. A. BIGGER *et al.*, *Appellees.*

No. 16,334.

SYLLABUS BY THE COURT.

ESTOPPEL—*Election of Remedies—Res Judicata.* A party claiming title brought ejectment to recover a tract of land from the grantee of a purchaser at a sheriff's sale. A mortgagee of the claimant was made a party. In a cross-petition he pleaded that he purchased the judgment under which the sheriff's sale was made to protect his mortgage, attacked the sheriff's sale and deed as utterly void, and prayed that he be given a mortgage lien on the land as the property of the claimant. After a trial the claimant and the mortgagee were defeated, the sheriff's sale and deed were sustained, and on

Ullrich v. Bigger.

appeal to this court the judgment was affirmed. The mortgagee and owner of the judgment then sued the successful defendant in the first action for the land, asking that the title conveyed by the sheriff's deed be decreed to be held in trust for him. The cause was submitted on the pleadings, evidence, judgment and other proceedings in the first case. *Held*, the relief prayed for is doubly barred, because incompatible with the course elected in the former suit, and because the matter is *res judicata*.

Appeal from Reno district court; PETER J. GALLE, judge. Opinion filed February 12, 1910. Affirmed.

*Carr W. Taylor*, for the appellant.

*F. L. Martin, W. G. Fairchild*, and *F. F. Prigg*, for the appellees; *C. M. Williams*, and *H. S. Lewis*, of counsel.

The opinion of the court was delivered by

BURCH, J.: The facts of this controversy are stated in *Caldwell v. Bigger*, 76 Kan. 49. After the adjudication in that action became final Ullrich sued Bigger and Bigger's grantees for the land involved, claiming that Martin took title under the sheriff's deed in trust for Ullrich. The defendants pleaded the proceedings in the former action, and at the trial the cause was rested upon such proceedings, including the evidence taken which had been duly preserved in the record made for this court. Judgment was rendered for the defendants, and Ullrich appeals.

In the case of *Caldwell v. Bigger*, supra, Ullrich stood upon the proposition that the sheriff's sale to Martin was utterly void, that the sheriff's deed executed pursuant to such sale had no legal effect as a conveyance of title, that title remained in Caldwell, and that the Ullrich mortgage should be foreclosed as a lien on Caldwell's land. The position was steadfastly maintained for some two years in the district court and in this court, and was not relinquished until a petition for a rehearing in this court had been denied. Ullrich now

faces completely about and takes the contradictory attitude that the sheriff's sale was valid, that the sheriff's deed did convey Caldwell's title to Martin, and that through Martin, as his trustee, Ullrich himself should recover the land. This involves a complete negation and repudiation of the claim of right furnishing the foundation for Ullrich's former pertinacious assault upon Bigger's title. May Ullrich assume two wholly inconsistent positions respecting the same transaction, and, having failed at the end of a protracted lawsuit to maintain one, succeed upon the other? The decided cases deny him such a privilege.

In *Plow Co. v. Rodgers*, 53 Kan. 743, a party delivered property to his agent for sale under a certain business arrangement. The agent absconded without an accounting. He sued the agent for the price of the goods on the theory of a sale. Afterward he undertook to recover the property itself from a sheriff holding it under writs of attachment against the agent, and was denied relief. He owned the property all the time or else he had sold it. Having affirmed in one action that title passed to the agent, he could not afterward assert the contrary in another. A similar situation was presented in *Evans v. Rothschild*, 54 Kan. 747. The syllabus reads:

"Where a party having full knowledge of all the material facts affecting his rights with reference to goods sold by him to a purchaser who is charged with having obtained them fraudulently, and intending never to pay for them, sues for the purchase price of the goods, he thereby elects to affirm the sale, and can not thereafter maintain an action to recover the specific property because of the fraudulent purpose of the purchaser."

In *City of Larned v. Jordan*, 55 Kan. 124, the city deposited money in a bank which failed. The money was a trust fund and title did not pass to the bank. The claim was made that the city presented to the assignee of the bank a demand on account for the deposit. The

court held that if the city had presented such a demand
and had obtained an allowance of any part of the
money it could not pursue the deposit as a trust fund.
It could not maintain sucessively the two inconsistent
positions that the deposit became a part of the general
assets of the bank and that it did not.

In the case of *National Bank v. National Bank,* 57
Kan. 115, a failing firm executed a chattel mortgage to
secure its indebtedness to a Kansas bank and an Illinois
bank. The Kansas bank accepted the security. The
Illinois bank repudiated it as a fraud upon the firm's
creditors and proceeded by attachment. The Kansas
bank established the validity of the mortgage in an ac-
tion against the Illinois bank and other attaching cred-
itors. Then the Illinois bank demanded a share of the
proceeds according to the terms of the mortgage, and
the demand was refused. The Illinois bank had the
option to claim that the mortgage was fraudulent and
void or that it was not fraudulent and was valid, but it
could not claim first one and then the other. Having
undertaken to overthrow the mortgage it precluded
itself from any benefit of the security when the mort-
gage was sustained. The opinion is instructive, and
reads as follows:

"The principle was well stated in *Thompson v. How-
ard,* 31 Mich. 309, 312, where the supreme court of
Michigan said:

" 'A man may not take contradictory positions, and
where he has a right to choose one of two methods of
redress, and the two are so inconsistent that the asser-
tion of one involves the negation or repudiation of the
other, his deliberate and settled choice of one, with
knowledge, or the means of knowledge, of such facts as
will authorize a resort to each, will preclude him there-
after from going back and electing again.'

"In the case now under consideration, the Illinois
bank had the option of accepting the security of the
chattel mortgage or rejecting it. In the latter case, it
might bring suit and obtain an attachment on the
ground that the chattel mortgage was fraudulent and
void as to creditors. It chose that course, and for five

years litigated against the Emporia bank to defeat the claim of the latter under the chattel mortgage, and to obtain the entire proceeds of the sale of the goods by means of its attachment suit. The chattel-mortgage security was not only repudiated, but made the ground for the writ of attachment. The respective remedies upon the chattel mortgage and the attachment were therefore altogether inconsistent with each other, and the plaintiff, having taken and so long pursued its remedy by attachment, must be content with the result." (Page 118.)

The case of *Burrows v. Jontz,* 57 Kan. 778, is similar to that of *City of Larned v. Jordan,* 55 Kan. 124. The syllabus reads:

"A person who has placed in the hands of an insolvent debtor a fund for a specific purpose can not present the claim to the debtor's assignee in insolvency as a general claim against the estate and thereafter pursue the fund in the hands of the assignee as a trust."

In the case of *Blaker v. Morse,* 60 Kan. 24, an executor of a deceased partner made a settlement of the partnership affairs with the surviving partners, taking secured notes, some of which were collected and others of which were placed in judgment. By the settlement the partnership property passed to the surviving partners, who organized a new firm, which became insolvent. Later the executor came into the insolvency proceedings and asked that his judgments be allowed against the receiver in charge of the estate of the insolvents, but his petition was denied. He then brought an action to have the estate in the receiver's hands impressed with a trust to the amount of his claim, on the ground the will and the relations of the parties precluded the settlement and transfer of property which had been made. This course involved a repudiation of all his former conduct. The court said:

"In any event the plaintiff is not now in a position to repudiate the settlement and to insist on the remedy which he seeks. It is wholly inconsistent with his former attitude and with the remedy which he then pur-

sued. Assuming that at the beginning he could have ignored the settlement and treated the amount due as a trust fund, he, as we have seen, adopted a contrary course and proceeded upon an entirely different theory. He ratified the settlement by accepting the results of the same; and he not only accepted the secured notes given in pursuance of the settlement, but he brought an action upon them and pursued that action to judgment, and that judgment he presented to the district court and asked to have it listed and allowed as a regularly proved claim against the receiver. It will be readily seen that the present action is incompatible with his previous course, and that the remedies are conflicting and inconsistent." (Page 29.)

In *Bank v. Haskell County*, 61 Kan. 785, a bank which was the county depositary made an assignment of property to the county board to secure the county funds. The board chose to sue and attach the assigned property. In litigation with a creditor of the bank holding an execution lien the attachment was defeated. The county then claimed the property under the assignment. The court said:

"After pursuing a remedy based upon the theory that the property in question was the property of the Haskell County Bank, upon which it had no claim other than an attachment levy, and causing the Bank of Santa Fe to litigate with it through a number of years over the validity of the attachment lien as against the execution lien, it can not now be heard to say that the property all the time belonged to it by virtue of the assignment and delivery under which it might have claimed in the first instance." (Page 789.)

In *Railway Co. v. Henrie*, 63 Kan. 330, a landowner sued the railway company for breach of an agreement to furnish him a life pass, offered in consideration for a right of way through the land. After protracted litigation he failed and then amended his petition to claim the value of the land taken and damages to the remainder of the tract. In holding the amendment was wrongfully permitted the court said:

"The two pleadings stated different grounds of re-

covery, and the causes of action set up were based upon entirely different rights. In the first, the plaintiff relied upon an express agreement giving the use of the right of way for the stipulated compensation, making that agreement, and the breach of it, the basis of recovery. In the second, he discarded that agreement and asserted that the right of way had been taken and used without consent or authority, and asked for the value of the land, on the theory that there had been a permanent appropriation. In the first, he undertook to get the value of life passes, which depended upon the age and expectancy of life remaining to him and his wife, and, also, the extent to which they would have been used. In the second, he sought to obtain the value of the land taken, and also damages for that portion of the tract not taken at the time of the appropriation. It can not be assumed that there will be a parity in the results worked out of two such dissimilar and inconsistent theories. It may be that the value of the land will greatly exceed the value of the transportation, and the fact that one is not necessarily the equivalent of the other illustrates, to some extent, the difference between the remedies which the plaintiff employed. A breach of an agreement to furnish free transportation for life gives a right which is essentially different from one arising from the wrongful appropriation of land. It would appear that not only were different causes of action set up, but that the remedies are distinct and inconsistent; and the general rule is that, where the law gives several means of redress or relief, predicated upon conflicting theories, the election of one of them operates as a bar against the subsequent adoption of the others." (Page 333.)

In *Remington v. Hudson*, 64 Kan. 43, a creditor of a corporation obtained judgment on certain promissory notes, caused execution to issue which was returned unsatisfied, and upon this basis proceeded against a stockholder of the corporation. Afterward he undertook to amend his petition by alleging the dissolution of the corporation and basing his right to recover against the stockholder on the notes merged in the judgment which furnished the foundation of his first claim. The court said:

"It is plain to be seen that the pleader stated different

Ullrich v. Bigger.

grounds of recovery, and the two remedies which he sought were based on entirely different rights. They were dissimilar and inconsistent, and being based on repugnant theories, the election of one of them is necessarily a bar to the subsequent adoption of the other." (Page 46.)

In *Sweet v. Bank*, 69 Kan. 641, the principle of election was elucidated as follows:

"Election goes not to the form but to the essence of the remedy. It applies only where the law supplies to a party two or more modes of procedure, predicated upon inconsistent and conflicting theories. If the remedies afforded be predicated upon consistent theories, the suitor may use one or all of them; there can be but one satisfaction. Where the remedies afforded are inconsistent, the election of one operates as a bar. Where the remedies afforded are consistent, the satisfaction of the claim operates as a bar." (Page 643.)

In *James v. Parsons*, 70 Kan. 156, the court considered the familiar case of a discharged servant who may take the employer at his word, treat the contract as nonexistent and sue upon *quantum meruit*, or who may stand upon the contract and insist that it shall measure his rights. In the opinion it was said:

"He can not, however, have both of these remedies, either simultaneously or by successive actions; having elected to pursue either, he is barred from pursuing the other. It is quite evident he can not at one time claim relief on the theory of no contract and at another claim under the contract." (Page 158.)

These cases sufficiently illustrate the principle involved and its application. The defendants rely upon them. The plaintiff meets them with the following statement in his reply brief, and nothing more: "The question of the election of remedies argued by defendants is not applicable to this case, and needs no reply." Why is the plaintiff exempt from the binding force of the doctrine of election? If the cases cited are to be followed, it must be held that in the beginning the plaintiff could say the sheriff's sale was void or that it

was valid. He could join forces with Caldwell, say the sheriff's deed had no effect on Caldwell's title and left his mortgage a lien on Caldwell's land, or he could say Caldwell's rights were extinguished by the sheriff's deed and elect to have Caldwell's title carried over to him through Martin and Bigger, as his trustees. But he could not say first one and then the other. If he set out in one direction he could not, when he found the thoroughfare barricaded, take the road leading in the opposite direction. He could not impeach the sale and afterward affirm it. He could not repudiate the sheriff's deed and afterward take advantage of it. He could not involve Bigger in extended and expensive litigation on one theory of his legal rights and when defeated relitigate the same matter on an opposite, incompatible and contradictory theory. If it had followed as a necessary legal consequence of a valid sale that Martin became a trustee for Ullrich, doubtless a different principle would apply. But such is not the case. It still took Ullrich's affirmative election to give that character to the transaction. He had this right of election at the beginning, and having determined what he would do he bound himself to consistency and estopped himself from subsequently seeking redress on a repugnant basis.

There is another bar which the plaintiff is unable to surmount. The relief he now desires was open to him in the case of *Caldwell v. Bigger,* supra, and he should have asked for it there. He was not called upon to become Caldwell's partisan, but should have pleaded the facts relating to the sheriff's sale and deed, should have submitted the question of their legality and their effect on Caldwell's title to the court, and should have prayed that, in the event the sale was sustained, Martin and Bigger be held to be trustees of the title for him. But he did not see fit to do this, and he can not now call upon the court to deduce from the identical facts a conclusion which should have been drawn in the first suit. The matter is *res judicata.* (*Dixon v. Caster,* 65 Kan. 739.)

Isnard v. Edgar.

Although not open for consideration as the basis of a judgment, the court has again looked into the merits of the case and is satisfied with the views expressed in the former opinion. There is no ground for holding that Martin took title as trustee for anybody, unless for Bigger, to whom he has discharged his obligation.

The judgment of the district court is affirmed.