No. 22,313.

SARAH J. WEST, *Appellee*, v. EMIL C. WEST, as Administrator, etc., *Appellant*, et al.

SYLLABUS BY THE COURT.

WILL—*Election by Widow to Take Under Will—Action to Set Aside Election—Estoppel.* The facts considered, and held that a widow's successful pursuit of a remedy in the probate court, whereby she obtained an allowance out of her deceased husband's estate on the asserted ground that she was a beneficiary of his will, under which she had elected to take, precluded her from subsequently maintaining an action to set aside the election.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 8, 1919. Reversed.

*Chester Stevens,* of Independence, and *Roy T. Osborn,* of Chicago, Ill., for the appellant.

*O. L. O'Brien, Thurman Hill,* both of Independence, and *Horace Merritt,* of St. Joseph, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a widow to set aside her election to take under the will of her deceased husband. The verdict and judgment were in her favor. A devisee, who is also administrator of the estate, and whose interests were prejudicially affected, appeals.

John West and his wife lived in Nebraska, and had five sons. Emil lived near his parents, and did business for his father, who could not write. The other sons instituted proceedings to have a guardian appointed for their father, on the ground of feeble-mindedness. Emil would not consent, and the proceeding was dropped. The widow testified as follows:

"I remember about the other boys wanting to have Emil appointed as guardian. My husband felt awful bad about it, because they thought he had gone crazy and wasn't fit to do anything. My husband and Emil went over to Straton and stayed over night and made the will."

Pertinent portions of the will follow:

"*Second.* After the payment of such expenses and debts, I give, devise and bequeath to my sons, Samuel A. West, George West, Er. West, and Emmett West, the sum of one dollar each.

"*Third.* I devise and bequeath to my beloved wife, Sarah Jane West, all my personal property and the income of my real estate during her lifetime, in the event that she survives me.

"*Fourth.* I devise and bequeath to my son, Emil C. West, all the real estate of which I die possessed, together with all my personal property, subject to the prior clause of my wife during her lifetime, as above provided."

In the latter part of December, 1912, John West and wife and Emil and his wife removed to Montgomery county, Kansas. On January 8, 1913, John West died. On February 20, after the required statutory proceeding relating to the subject, the widow signed the following election, which was duly witnessed and filed:

"To the Honorable Probate Court of said county:

"The undersigned widow of John W. West, deceased, having had fully explained to her, by said court, the provisions of the last will and testament of her deceased husband and her rights under the same, and also the provisions of the law concerning descents and distributions and her rights under said law in event of refusal to take under the will, and being fully informed in the premises, hereby elects to take under the said last will and testament."

After probate of the will, the widow continued to live with Emil. There was evidence, having no relevancy whatever to the validity of the widow's election, that Emil's wife was harsh and unkind to her, and that Emil himself did not display proper solicitude for her needs and comfort. In July, 1915, the son Samuel appeared at Emil's house in the nighttime, while Emil and his wife were absent, awakened the old lady, took her away, and the next day took her to Nebraska. On July 5 she went to George's home to live, and soon afterward attorneys were consulted. Testifying on behalf of his mother George said:

"All of the boys were present when these consultations were held. We investigated the matter fully, and told our attorney all of the facts as soon as we could. We consulted with Mr. Druliner in July, 1915, and then went over to McCook the last of July or the first of August, 1915, and consulted with this lawyer about the will, and about her getting her part of the will. He had a copy of the will and of her election to take under the will, and we also talked about this with Mr. Druliner, and showed him and the lawyer at McCook the will and the election, and my mother told all the facts and circumstances. . . . About the first of 1916, I took the matter up with Mr. Merritt, of St. Joe, Mo. He was then a member of the firm of Merritt & Reese. . . . Merritt & Reese agreed to take the case for forty per cent. The

first arrangement was forty per cent, and the second one was for thirty-five per cent. None of us was to pay anything. I simply arranged for the fees to be paid out of my mother's estate, if she got it."

.The action was commenced on August 25, 1917. The peti-tion was framed on a single and distinct theory. It is stated that the widow was fully advised of her right to elect, and of what she would take under the law, but she was misadvised as to what she would take under the will, both by the probate judge and by her son Emil, who was her confidential adviser. The misadvice consisted in telling her that the will gave her the personal property absolutely. She did not deny that this is the true interpretation of the will, but she alleged that Emil knew a question could be raised, and in the execution of a fraudulent design he willfully and deliberately took advantage of his confidential relation to deceive his mother into refrain-ing from taking a course which would be definite and fixed.

After a motion attacking the petition had been sustained, the plaintiff's attorneys filed an amended petition, in which the ground of relief was shifted. While the plaintiff still ad-mitted that Emil told her she was entitled to elect to take under the will or under the law, she alleged that she was not informed by any one as to the law of the case. She was told the will gave her all the personal property, and she signed the election without knowing there was any question about her right to have all the personal property, and without knowing she had the right to one-half the estate, absolutely, under the law. There were further allegations that Emil and the probate judge advised her it was to her best interest to take under the will, because she would receive all the personal property. Willful and deliberate fraud and breach of confidence on the part of Emil were charged.

The defendant pleaded the statute of limitations, and an af-firmative defense, which will be considered later. No reply was filed, and the case came on for trial. The amended petition stated that the plaintiff "is now informed by her attorneys that, under the laws of Kansas, she, as the widow, is entitled to one-half of her said husband's estate." The time when the attorneys informed her was not stated. The defendant ob-jected to any trial, because he was entitled to judgment on the pleadings, and the plaintiff's attorneys obtained leave to

file a reply instanter, to meet the plea of the statute of limitations. The reply reads as follows:

"Comes now the plaintiff herein and for her reply to the answer herein alleges and says that she denies each, every, all and singular of said allegations which in any way contradict the allegations set out in her petition.

"That she did not discover that she had a right to elect to take half of her husband's property under the law until in July, 1915; that she never understood her legal right under the will and under the law until said time; that she never knew she was incorrectly informed as to her rights until said time; that she had continued to live with Emil until said time, and had no opportunity to ascertain and learn the true facts until she left his home and learned the same from other sources."

The defendant promptly moved for judgment on the pleadings, contending the action was one for relief on the ground of fraud, and was barred by the statute of limitations, because the fraud was discovered more than two years before the petition was filed. The plaintiff's attorneys then asked and were granted leave to amend the reply, which they did by moving the date forward two years, to July, 1917. As the reply then stood, the reason she had not discovered her situation sooner was that she had continued to live with Emil until July, 1917, which was two years after she had left his home.

At the trial the plaintiff was a witness in her own behalf, and departed quite radically from the case presented by the amended petition. The effect of her testimony was that the probate judge read the will to her. When she heard that George, who worked in the field before Emil was born, was given one dollar, she commenced to cry. She was so broken up she did not know what they said or did, and did not understand what they said or did. She said she did not doubt the probate judge told her a lot of things, but she was not capable of understanding business at that time, and if they told her she could do as she pleased, and need not sign the election, she did not understand them; if she had known or understood she would not have signed.

"After the will was read they presented me papers to sign, something near the size of that. I don't know whether that's it. . . . Well, they told me to sign it, and told me where to put my name, and I just wrote it there like I didn't have no sense. . . . I didn't read the paper at all. I don't mind it being read, but they might have read it. I don't mind what they done. . . . I thought that when the men

went up to interview this man and made a will and got a lawyer, I just thought, why I had to sign it."

The probate judge was a witness, and testified to facts showing full performance in every respect of his official statutory duty. He further testified that after her rights under the law and under the will were fully explained to her, the plaintiff said she wanted "to take it just as pap had left it," and being asked whom she meant by "pap," she said her husband. Emil took no part in the proceeding.

It is not necessary to resort to the law relating to the character and quality of evidence necessary to impeach the integrity of the probate judge's conduct to know that whatever else occurred his official duty was performed. The plaintiff does not deny the fact. Incidentally, her story, which without doubt is true according to her memory of what occurred, confirms the fact. It may be observed further that, so far as the plaintiff's testimony is concerned, Emil's sole connection with his mother's election to take under the will consisted in being present—unless it be that her expression, "they told me to sign it," meant that both the probate judge and Emil told her to affix her signature. There is not a word about the statements of fact and the advice attributed to Emil in the pleadings, and which induced her to act to her detriment. The result is that a proceeding begun with resounding charges of active fraud and of dereliction of official duty, and characterized throughout by contradictions and inconsistencies, is argued in the plaintiff's brief as based on Emil's silence—criminal silence. This depravity consisted in not briskly interpreting the will against his mother. Her attorneys are still contending the will gave her all the property absolutely. However, it was wise Emil's stern filial duty to speak up and tell his mother to take half of the small property and live on that. There was no doubt under the will that as long as she lives she has the productive power of the entire estate to support her, and her attorneys say, as will presently appear, that, while her right to take the property absolutely is contested, it is conceded the will gave her the income from all of it, and the right to consume as much of the body of the estate as may be necessary to support and maintain her.

The question whether or not the verdict of the jury may be sustained will not be discusssed, because the controversy is

readily determinable on consideration of another phase of it, discussion of which was postponed when the contents of the answer were stated. As early as July, 1915, the plaintiff was making application for orders affecting the administration of the estate. In September, 1916, she made application for an allowance out of the estate. In October, 1916, the attorneys who now represent her filed, on her behalf, in the probate court, an application based on the fact that she is a beneficiary under the will, the opening paragraph of which reads as follows:

"Comes now Sarah Jane West and states to the court that, as she understands the will of the deceased, John W. West, all the personal property of said estate is given to her absolutely, but this question is in controversy, and under the adverse constructions it is conceded that she is entitled to the personal property for her lifetime, and therefore to use the income and a sufficient amount of the body of the estate to support and maintain her, and she is therefore entitled to her support while the question of the construction of said will is pending for settlement by the court. She is the widow of said John W. West, and a beneficiary under the will as hereinbefore stated."

The application then proceeded to state that she was living with her son George, who was charging her fifteen dollars per month for room and board; that she had purchased her own coal in winter time; that she had gone in debt for a small supply of clothing; and that during the previous sixteen months she had been deprived of many ordinary comforts and had suffered by reason of lack of means to provide them. The prayer was for an order on the administrator to pay her immediately the sum of $270, and to pay her monthly thereafter the sum of $25. This application was heard in the probate court, and the proceeding ultimately resulted in an order made on August 17, 1917, that the administrator of the estate pay her $250. The answer pleaded the application, proceeding, and judgment, as confirmation and ratification of the widow's election to take under the will, and as an estoppel against prosecution of the present suit.

It is perfectly clear that the plaintiff elected a remedy utterly inconsistent with maintenance of an action to set aside her election. The widow of a testator may take under the will or under the law, but she cannot do both. She has the right to elect how she shall take, but her election is between

will and no will, and she is not permitted to assume antagonistic attitudes. (*Ashelford v. Chapman,* 81 Kan. 312, 105 Pac. 534.) Before the plaintiff's application was made to the probate court, she had the right to set aside her election to take under the will, if she could, and resort to remedies which would secure her the share of the estate which the statute of descents and distributions gave her. On the other hand, she had the right to stand by her election, assert her right as a legatee under the will, and resort to remedies which would secure appropriate relief. She chose the latter course. In her application she specifically asserted that she was a beneficiary under the will, whether she took the estate absolutely or for life, and she sought and obtained relief of a character which, in her opinion, did not transgress either interpretation of the will. She cannot now pursue a course of conduct which negatives the asserted fact. (*Ullrich v. Bigger,* 81 Kan. 756, 106 Pac. 1073, and cases cited in the opinion; *James v. Lane,* 103 Kan. 540, 543, 175 Pac. 387.)

It is essential to application of the doctrine of election of remedies that the election be made with knowledge, or means of knowledge, of the material facts. This is not a case of estoppel to dispute an election by acts *in pais,* to take under a will. It is a case in which formal election was made, and the widow afterwards had the choice of taking advantage of it by invoking consistent remedies, or of repudiating it. In such cases the ordinary rule of ratification applies, and possession of such sources of information as would lead an ordinarily prudent person to the facts is equivalent to knowledge. Each time the plaintiff's attorneys went to the probate court to file an application they were confronted by the election to take under the will, lying in the files of the very cause in which application was to be made. That instrument, which may be read on a preceding page of this opinion, shouted to them every fact relating to the plaintiff's situation necessary for them to know in order to make intelligent choice of a course of conduct, including the subject of "refusal to take under the will." The result is, the law declares the election of remedy was knowingly made. It came out in the trial that the election, together with all the circumstances under which it was made,

34—105 KAN.

was, in fact, in possession of the plaintiff's attorneys at consultations respecting her legal rights, between herself, her sons other than Emil, and her attorneys, as early as July, 1915.

It is said the subject just discussed was not brought to the attention of the district court. The facts were pleaded in full in the answer as new matter, constituting an affirmative defense. Before the reply was filed, the defendant objected to trial because the allegations of the answer entitled him to judgment. After the reply was filed, the defendant moved for judgment on the pleadings, on the stated ground that the application was a waiver of the plaintiff's right to set aside her election, and the judgment of the probate court granting relief on the application was inconsistent with the judgment sought to be obtained. At the commencement of the trial the defendant objected to the introduction of evidence, on the ground the affirmative matter pleaded in the answer barred recovery by the plaintiff.

It is said no evidence was introduced proving the affirmative defense pleaded in the answer. There was no occasion for the introduction of such evidence. Existence of the facts constituting the defense was not denied by the reply, which confined itself to denying such allegations of the answer as were contradictory to allegations of the petition. The affirmative defense contradicted nothing stated in the petition, and if the answer had contained nothing else, there would have been no occasion to introduce evidence in support of the petition. A copy of the application was attached to the answer. The judgment of the probate court was pleaded by stating its due rendition and its terms, with a reference to the record. The entire proceeding constituting the defense of election of remedy was matter of record, made by the attorneys for the plaintiff themselves. There was no dispute about it, either formal or actual, in the district court, and there is no dispute about it here; and the question presented was and is the legal sufficiency of the affirmative defense.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.