No. 22,315.

M. E. NUCKLES, *Appellee,* v. P. H. TALLMAN et al. (W. C. MONTGOMERY, *Appellant*).

### SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Land—Authority of Agent to Make Contract with Prospective Purchaser—Dual Agency.* Where the owner of land writes to a real-estate broker, who is acting in his behalf, the terms on which he is willing to sell it, the circumstance that the broker, without his knowledge, is also acting as the agent of the prospective purchaser cannot convert the negotiations between the owner and his broker into a contract for the sale of the land which can be specifically enforced on the demand of the would-be buyer.

2. CONTRACT—*Specific Performance—Rights of Holder of Unrecorded Deed.* Where an action affecting title to real estate is brought against the record owner after he has executed a conveyance thereto and before it has been recorded, if the grantee intervenes therein before judgment, he is not precluded by his delay in putting his deed on record from making a defense on the ground that he bought and paid for the property without actual or constructive notice of the plaintiff's claim.

Appeal from Hamilton district court; GEORGE J. DOWNER, judge. Opinion filed February 7, 1920. Reversed.

*H. P. Jones,* of Syracuse, and *J. W. Newell,* of Topeka, for the appellant.

*H. E. Walter,* of Syracuse, for the appellee.

The opinion of the court was delivered by

MASON, J.: P. H. Tallman and his wife, living in Minneapolis, Minn., owned a half section of land in Hamilton county, Kansas. Tallman had some correspondence with Ray Jackson, of Syracuse, in which he signified his willingness to sell it for $1,200, on stated terms. Jackson prepared the papers for a sale to M. E. Nuckles and sent them to Tallman. After some further correspondence Tallman refused to carry out the deal. Nuckles then, on February 19, 1918, brought an action against Tallman for specific performance, alleging that Jackson had been acting as his agent. Service on Tallman was obtained by publication, and he made no defense. On April 9,

1918, W. C. Montgomery, on his own application, was made a party defendant. He demurred to the petition, and after his demurrer had been overruled filed an answer alleging that on December 28, 1917, without knowledge of the plaintiff's claim, he had bought and paid for the land, receiving a warranty deed from Tallman and his wife, which was recorded on March 11, 1918. A demurrer to the evidence offered in support of this answer was sustained, and judgment was rendered in favor of the plaintiff for specific performance. Montgomery appeals.

1. While the petition alleged, and the allegation was not denied, that Jackson was the agent of Nuckles in the transaction, there was nothing in the correspondence between Jackson and Tallman to suggest such relationship. Jackson, so far as Tallman could know, was acting as his agent to find him a buyer for the land. Jackson's services were such as to entitle him to recover of Tallman the fifty-dollar commission he was charging him, but he was not authorized to execute in his behalf a binding contract for the sale of the land, nor does he appear to have undertaken to do so. It is true that in one letter Tallman told him he might "sell" the land on terms stated, but the obvious meaning was that he might find a purchaser and negotiate the terms of sale. Tallman's dealings were wholly with his own agent, Jackson, until the papers were presented to him for execution, and then he refused to deal. In that situation no enforceable contract resulted between Tallman and Nuckles. (*Wiggam v. Shouse*, 105 Kan. 637, 185 Pac. 896.) The circumstance that Jackson was acting as the agent of Nuckles could not bind Tallman so long as he remained in ignorance of it. Inasmuch, however, as further proceedings may develop a different state of facts with respect to this aspect of the case, it will be necessary to consider the other features of the matter as well.

2. The trial court obviously proceeded on the theory that because Montgomery did not record his deed until after the action for specific performance had been begun, he was in effect a purchaser *pendente lite* and could make no defense excepting such as would have been open to Tallman. It is well settled in this state that if he had kept his deed from record until after the rendition of final judgment against

Tallman, making no appearance in the case, he would have been as completely cut off as if he had been a party and had made no defense. (*Smith v. Worster*, 59 Kan. 640, 54 Pac. 676; *Caldwell v. Bigger*, 76 Kan. 49, 90 Pac. 1095; *Kitchener v. Jehlik*, 85 Kan. 684, 118 Pac. 1058; *Hillyard v. Fick*, 89 Kan. 108, 130 Pac. 675.) In some of the cases cited it is said, in substance, that one who receives a deed to land before an action affecting the title is brought against his grantor, but does not record it until afterwards, is regarded as a purchaser *pendente lite*. But the language must be interpreted in the light of the facts to which it was applied. In every such instance the holder of the unrecorded deed failed to intervene in the action, and sought to invoke the aid of the courts only after a judgment had been rendered against the apparent owner. The prevailing rule elsewhere seems to be that the holder of an unrecorded deed is not affected by a judgment (in an action brought after the execution thereof) against his grantor purporting to affect the title. (17 R. C. L. 1030; 21 A. & E. Encycl. of L. 650; 25 Cyc. 1480.) A distinction has been suggested turning upon whether or not the benefit of the recording act is in terms limited to innocent purchasers. (Note, 56 Am. St. Rep. 871, 872.) However, some such provision is ordinarily implied even where not expressly stated. (23 R. C. L. 241.) While our own statute (Gen. Stat. 1915, § 2070) provides that an unrecorded deed shall be valid only between the parties or such as have actual notice thereof, it may doubtless be safely said that such an instrument is to be given full force except as against the claims of innocent purchasers for value, or persons having equities of substantially equal strength. Thus, a creditor of the holder of the apparent title to land can take no benefit from the failure of the real owner to record his deed (*Holden v. Garrett*, 23 Kan. 98) ; the holder of a quitclaim deed is charged with notice of an unrecorded instrument of which he could have learned by the exercise of due diligence (*Merrill v. Hutchinson*, 45 Kan. 59, 25 Pac. 215) ; and one who has paid nothing—or a merely nominal sum—for a deed cannot avail himself of the recording act to defeat the title of the true owner. (*Morris v. Wicks*, 81 Kan. 790, 106 Pac. 1048.)

The difference in standing between one who does and one who does not intervene in a title action brought while he holds

an unrecorded deed may perhaps be best determined by considering a concrete illustration.   Suppose that A, the owner of a tract of land, executes a deed to B, who neglects to record it promptly.·  C, who has no actual knowledge of the deed, but has information which if diligently followed would lead to it, obtains a quitclaim from A for a small sum.   He then brings an action against A to quiet title.   If B, with actual knowledge of the bringing of the action, deliberately allows it to proceed to a judgment declaring C to be the owner, he loses his own title, and obviously can make no just complaint of that result. If he have no actual notice of the filing of the action the situation is substantially the same, because the law imputes such notice to him.   If he were a prospective purchaser he would be required to advise himself at his peril of new litigation affecting the title (Gen. Stat. 1915, § 6977), and by suffering his deed to remain unrecorded he voluntarily incurs a like obligation while that condition exists.   A sufficient reason for enforcing this general rule is that stated in *Caldwell v. Bigger,* 76 Kan. 49, 90 Pac. 1095—otherwise by the process of recording the deed after judgment and at once causing a new deed to be executed and held off the record it would be possible to prevent indefinitely the rendition of an effective judgment fixing the state of the title.

If, on the other hand, in the case supposed, B, upon learning of the action to quiet title, were to cause himself to be made a party before it had proceeded to judgment, no sufficient reason is apparent why the case should not be determined by the equities as they then existed, in which case B would prevail, because C, having accepted a quitclaim deed, was chargeable with notice of the outstanding deed, since reasonable inquiry would have advised him of it.   To allow C to hold the land merely because he had succeeded in getting his petition against A filed before B had recorded his deed would be to suffer the recording act to be made a means of perpetrating gross injustice—a result which its framers never intended, and which would be compensated by no countervailing benefit to the public or individuals.

In the present case, assuming the evidence in behalf of Montgomery to be true, he had bought and paid for the land without knowing that Nuckles had any claim upon it.   Inasmuch as Nuckles had made no payment on his contract he

could derive no advantage from the mere fact that the Montgomery deed had not been recorded, and no possession had been taken under it. (23 R. C. L. 244, § 109; 39 Cyc. 1701.) The filing of his petition against Tallman for specific performance did not involve any substantial change in his position to his disadvantage in reliance on the state of the record, such as to entitle him to the consideration shown to an innocent purchaser for value.

Judgment was rendered for the conveyance of an undivided half interest in the land, that appearing to be the extent of Tallman's ownership, the price to be abated accordingly. No specific provision appears to have been made as to how Nuckles should pay for the property. Obviously, even if Montgomery's title should be found to have been acquired with knowledge of a valid claim of Nuckles, he should receive the purchase price. A formal judgment for damages was rendered against Tallman, but as no personal service was had on him this was, of course, without effect.

The judgment is reversed with directions that if the evidence of Montgomery be found to be true judgment shall be rendered in his favor; otherwise that such proceedings be had in accordance herewith as may be necessary.